5:13 pm

# ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

FILED
FEB 22 2008
U.S. COURT OF FEDERAL CLAIMS

L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 08-101 C

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff L-3 Global Communications Solutions, Inc. ("L-3 GCS"), by its attorneys, and for its Complaint against the Defendant, the United States of America, acting by and through the U.S. Department of Homeland Security, United States Coast Guard Office of Contract Support, General Contract Division, G-ACS-2 ("Coast Guard" or "Agency"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to seek declaratory relief against the Defendant in an order declaring that the Coast Guard's award of a contract (the "Contract") to ADCI of Delaware, LLC ("ADCI"), pursuant to Request for Quotation No. HSCG23-08-Q-TMM001 ("RFQ" or "Solicitation"), was contrary to applicable procurement law and regulations, and that award should be made to L-3 GCS as the offeror representing the best value to the Government. Plaintiff also seeks preliminary and permanent injunctive relief against the Defendant in an order enjoining performance of the Contract.

2. The RFQ stated that the Contract provides satellite airtime and billing services for International Maritime Satellite ("INMARSAT") Mini-M and Fleet series terminals under the General Services Administration ("GSA") Federal Supply Schedule ("FSS") 70 Contract.

3. Since STRATOS is the only commercial airtime service provider configured to be compatible with both the Coast Guard's Fleet-55 (including shipboard) terminals and the Coast Guard's data network, the Solicitation required that all proposals offer STRATOS as the Land Earth Station Operator ("LESO").

4. L-3 GCS's proposal offered exclusive STRATOS airtime services.

5. ADCI, in contrast, failed to provide exclusive STRATOS airtime services, rendering its proposal technically deficient and unacceptable.

6. By failing to conform to the Solicitation's mandatory and material requirements, ADCI's proposal was technically unacceptable, and therefore ineligible for award of the Contract.

7. Despite ADCI's proposal being non-responsive and technically unacceptable, the Coast Guard awarded the Contract to ADCI. As a result, the Coast Guard violated applicable procurement law and regulations by: (1) conducting a defective evaluation of ASDI's proposal; (2) failing to follow the RFQ's requirements; and (3) failing to treat the offerors equally.

8. Had the Coast Guard conducted a proper evaluation of ADCI's proposal, it would have determined that ADCI's proposal was technically unacceptable, and therefore would have awarded the Contract to L-3 GCS, as the offeror representing the best value to the Government. Consequently, L-3 GCS was substantially prejudiced.

## JURISDICTION

9. This Court has jurisdiction over this post-award bid protest pursuant to 28 U.S.C. § 1491(b).

## PARTIES

10. Plaintiff L-3 GCS is a Virginia corporation with its principal place of business at 7640 Omnitech Place, Victor, New York 14564. L-3 GCS is an incumbent on the current contract for INMARSAT satellite airtime services. The Defendant is the U.S. Department of the Homeland Security, United States Coast Guard Office of Contract Support, General Contract Division, G-ACS-2, which is a federal agency within the executive branch of the United States Government.

11. L-3 GCS submitted a timely proposal in response to the RFQ and is otherwise eligible for award. If the requested relief is granted, L-3 GCS will be awarded the Contract and therefore has standing to pursue this action.

## FACTUAL ALLEGATIONS

### Background

12. L-3 GCS was established in 1995 as a supplier of satellite communications products, airtime services and turnkey systems solutions to U.S. and international military, government, industrial and commercial accounts. L-3 GCS presently has approximately 100 employees operating from its headquarters in Rochester, New York, and several sales locations across the United States.

13. L-3 GCS is an incumbent of the predecessor contract for the provision of INMARSAT satellite airtime services to the Coast Guard.

14. As a key provider of INMARSAT airtime, over the last 18 months L-3 GCS has managed more than six million airtime minutes for the Department of Defense, Federal/Civil Agencies, and Emergency Response and Commercial Customers.

**The Solicitation**

15. On October 22, 2007, the Coast Guard issued Request for Quotation No. HSCG23-08-Q-TMM001, which sought to continue existing satellite airtime services for the Coast Guard's INMARSAT, Mini-M and Fleet series terminals.

16. Paragraph 1.5 of the RFQ's Statement of Work stated that "this is a Blanket Purchase Agreement (BPA), there will be a five (5) year ordering period from 1 November 2007 to 31 October 2012, unless the BPA ceiling has been reached first."

17. In describing the evaluation process, the RFQ required the Government to "make a BPA award to the responsible vendor deemed technically acceptable with the lowest quoted price determined to be fair and reasonable."

18. The RFQ also required the offerors to include "[a] statement of compliance that the contract can meet all the services prescribed in this RFQ."

19. Because STRATOS is the only commercial airtime service provider configured to be compatible with both the Coast Guard's Fleet-55 (shipboard) terminals and the Coast Guard's data network, the Coast Guard required that all proposals offer STRATOS as the Land Earth Station Operator ("LESO").

20. On or about October 25, 2007, the Coast Guard posted responses to bidder's questions on GSA's "eBuy," a public website which all potential offerors could review. In Question Set #2, Question #3, asked, "Given that the MDPS and ISDN traffic is terminated terrestrial using the existing LESO, we assume that it is mandatory that we use the same LESO for that requirement. If so, please state who that LESO is." The Coast Guard posted a single-word response to this question: "STRATOS." This response confirmed that STRATOS was the mandatory LESO for the MPDS and ISDN traffic under the Solicitation, which includes the Fleet-55 terminals.

21. The RFQ initially required bidders to submit a quotation to the Purchasing Agent "on or before 10:30 AM, EDT, on 29 October 2007." This deadline was subsequently extended to November 2, 2007.

22. On November 2, 2007, L-3 GCS submitted a timely proposal in response to the RFQ. L-3 GCS's proposal designated STRATOS as the only satellite airtime services provider.

**The Evaluation and Award**

23. Federal Acquisition Regulation ("FAR") 8.405-2(d) requires that agencies "[p]lace the order, or establish the BPA, with the schedule contractor that represents the best value."

24. By letter dated December 3, 2007, the Coast Guard advised L-3 GCS that "[i]n accordance with Federal Acquisition regulation (FAR) Subpart 8.4 'Federal Supply Schedules,' a 'Lowest Price, Technically Acceptable' (LPTA) blanket purchase agreement (BPA) under GSA 70. . . has been awarded to ADCI of Delaware, LLC, 5550 Friendship Blvd., STE 340, Chevy Chase, MD, 20815-7227 with a BPA ceiling in the amount of $28,940,576.25."

25. On December 20, 2007, the Coast Guard Contracting Officer and Purchasing Agent telephonically debriefed L-3 GCS. At that time, the Coast Guard asserted that all offers received by the Coast Guard were technically acceptable, and that the award was therefore made on the basis of price alone. The Coast Guard also asserted that L-3 GCS was not selected for the award because its price was higher than that of ADCI.

26. During the debriefing, L-3 GCS requested the Coast Guard to verify that the other proposals had offered STRATOS as the exclusive airtime services provider, in accordance with the Solicitation's requirements. The Coast Guard stated that all offerors, including ADCI, had complied with this requirement.

27. During the debriefing, the Coast Guard reaffirmed that the Solicitation clearly designated STRATOS as the only acceptable satellite airtime services provider, and that STRATOS would be the sole and exclusive airtime service provider for the full five (5) year effective period of the Contract.

28. During the debriefing, L-3 GCS explained that this requirement was an extremely important consideration given the fact that the use of another airtime provider could enable the offeror of an alternative airtime provider to submit a lower priced, albeit materially non-compliant proposal.

29. During the debriefing, the Coast Guard further explained that, for very compelling practical reasons, no other airtime services provider could be accepted because the Coast Guard communication network is configured in such a way that the use of any airtime services provider other than STRATOS would force the Coast Guard to undertake a wholesale, prohibitively expensive reconfiguration of their network.

30. The Coast Guard closed the debriefing by stating that if, L-3 GCS learned that arrangements have been or are being made to substitute a non-STRATOS service provider, L-3 GCS should report the occurrence to the Coast Guard Contracting Office, which would act to prevent such a bait and switch substitution.

31. Because of the award to ADCI and the assurances received during the debriefing that ADCI's proposal utilized only STRATOS, L-3 GCS believed that the services it was providing under the predecessor contract would be transitioned to ADCI in the month of January 2008.

32. Instead, by the end of January 2008, none of the Fleet-55 terminals being serviced by L-3 GCS had been transitioned to ADCI. To date, L-3 GCS continues to provide airtime services to all of the Coast Guard's Fleet-55 terminals.

33. Further, on January 31, 2008, the Coast Guard advised L-3 GCS that a Fleet-55 terminal that is to be installed on the new Coast Guard Cutter "Ocracoke" will be activated under the L-3 GCS predecessor contract rather than under the contract awarded to ADCI. These events caused L-3 GCS to begin inquiries in an attempt to discover why the expected transition had not occurred.

34. On February 7, 2008, L-3 GCS's personnel attempted to contact the Coast Guard Contracting Officer regarding the anticipated switchover from L-3 GCS to ADCI. A Coast Guard communications specialist in TISCOM informed L-3 GCS that ADCI had proposed an unacceptable technical solution which the evaluation team must have overlooked.

35. Rather than utilizing STRATOS as the exclusive airtime services provider under the Contract as required by the RFQ, ADCI's proposal had actually been based on the use of Telemar Italia (ADCI's foreign parent) as its airtime services provider. This non-compliant and technically unacceptable proposal prevented the Coast Guard's Fleet-55 terminals from being able to communicate with the Coast Guard data network.

36. ADCI's use of an airtime services provider other than STRATOS was exactly what L-3 GCS had challenged during its debriefing, and was exactly what the Coast Guard had promised would not occur.

37. L-3 GCS subsequently attempted to reach the Contracting Officer on numerous occasions to confirm whether the contract awarded to ADCI was being terminated.

38. To date, L-3 GCS has not been able to obtain confirmation that the contract awarded to ADCI is being terminated and, therefore, L-3 GCS reluctantly brings the instant action.

## COUNT I

### ADCI's Proposal Was Technically Unacceptable and Therefore Ineligible for Contract Award

39. L-3 GCS hereby realleges and incorporates by reference paragraphs 1 through 38 of this Complaint as if set forth herein.

40. The Solicitation mandated that STRATOS be offered as the exclusive airtime services provider. The Coast Guard reconfirmed this requirement at L-3 GCS's debriefing.

41. The Solicitation also required offerors to make "[a] statement of compliance that the contract can meet all the services prescribed in this RFQ."

42. Despite these requirements, ADCI failed to offer STRATOS as its exclusive provider of airtime services.

43. The Solicitation also stated the start date for performance and required proposals to provide full provision of the required services on that date. This delivery schedule or time of performance is a material requirement of this solicitation.

44. However, ADCI did not propose and was not prepared to provide STRATOS service on the required start date of the Contract as required by the RFQ.

45. ADCI either intentionally misled the Coast Guard by initially representing that it intended to provide exclusive STRATOS airtime services and, thereafter, conducting a "bait and switch," or failed to realize that the Solicitation required the exclusive use of STRATOS airtime services.

46. In either event, ADCI's proposal was nonresponsive and technically unacceptable because it failed to comply with three material requirements of the Solicitation: (1) providing exclusive STRATOS service; (2) providing an accurate certification of compliance with the Solicitation; and (3) offering the required performance (including STRATOS) promptly at time of contract award.

47. ADCI's proposal was technically unacceptable and therefore cannot form the basis of an award. The award to ADCI was arbitrary and capricious, an abuse of discretion, inconsistent with the terms of the solicitation, and contrary to law and regulation. L-3 GCS was substantially prejudiced and directly harmed by the improper award to ADCI. Accordingly, the Contract awarded to ADCI under the RFQ must be terminated and award made to L-3 GCS.

## COUNT II

### The Coast Guard Conducted a Defective Technical Evaluation

48. L-3 GCS hereby realleges and incorporates by reference paragraphs 1 through 47 of this Complaint as if set forth herein.

49. The RFQ requires the Coast Guard to evaluate each offeror's proposal as it relates to the Solicitation's requirements and objectives and "make a BPA [Blanket Purchase Agreement] award to the responsible vendor deemed technically acceptable with the lowest quoted price determined to be fair and reasonable." (emphasis added)

50. By failing to exclusively offer STRATOS airtime services, ADCI's proposal did not provide a technically acceptable solution.

51. The Coast Guard failed to recognize deficiencies in ADCI's proposal and therefore erroneously rated ADCI's proposal as the "Lowest Cost, Technically Acceptable" proposal.

52. Had the Coast Guard properly evaluated ADCI's proposal in accordance with the RFQ's requirements, the Coast Guard would have identified ADCI's lack of compliance with the RFQ and determined that they were ineligible for contract award.

53. The Coast Guard's evaluation of ADCI's proposal was arbitrary, capricious, an abuse of discretion, inconsistent with the terms of the RFQ and contrary to law and regulation. L-3 GCS was substantially prejudiced and directly harmed by the Coast Guard's defective evaluation of ADCI's proposal. Accordingly, the contract awarded to ADCI under the RFQ must be terminated and award made to L-3 GCS.

## COUNT III

## The Coast Guard Failed to Follow the Requirements Set Forth in the RFQ and Improperly Waived Mandatory Requirements for the Benefit of ADCI

54. L-3 GCS hereby realleges and incorporates by reference paragraphs 1 through 53 of this Complaint as if set forth herein.

55. The RFQ required provision of STRATOS as the exclusive provider of airtime services, required certification of compliance with the RFQ requirements and required offerors to propose provision of all services (including STRATOS) by the dates set forth the RFQ. The ADCI proposal failed to meet these requirements. Under the RFQ's requirements, the Coast Guard should have rated ADCI's proposal as technically unacceptable.

56. Instead, the Coast Guard improperly waived the requirements of the RFQ for the benefit of ADCI, failed to follow the requirements of the RFQ in accordance with its obligations, and improperly determined the ADCI proposal to be technically acceptable.

57. If the Coast Guard had not waived mandatory requirements for the benefit of ADCI and improperly failed to follow the requirements of the RFQ, the ADCI proposal would have been disqualified from further consideration and would not have received a contract award.

58. By failing to follow the RFQ's requirements, the Coast Guard violated its obligations to the offerors, and therefore its award to ADCI was improper.

59. Had the Coast Guard followed the RFQ's requirements and selected the "Lowest Cost, Technically Acceptable" proposal, the Contract would have been awarded to L-3 GCS as the offeror representing the best value to the Government.

60. The Coast Guard's failure to follow the RFQ's requirements was arbitrary, capricious, an abuse of discretion, inconsistent with the terms of the RFQ and contrary to law and regulation. L-3 GCS was substantially prejudiced and directly harmed by the Coast Guard's failure to follow the RFQ's requirements. Accordingly, the contract awarded to ADCI under the RFQ must be terminated and award made to L-3 GCS.

## COUNT IV

## The Coast Guard Failed to Treat Offerors Equally

61. L-3 GCS hereby realleges and incorporates by reference paragraphs 1 through 60 of this Complaint as if set forth herein.

62. The Coast Guard has an obligation to treat the offerors equally.

63. L-3 GCS's proposal should have been rated as the "Lowest Cost, Technically Acceptable" proposal.

64. By improperly rating ADCI's proposal as "technically acceptable," the Coast Guard failed to apply the evaluation criteria equally and failed to discharge its duty to apply the same evaluation standard to all offerors.

65. L-3 GCS has been directly harmed by the Coast Guard's unequal treatment of offerors. Had the Coast Guard treated the offerors in an equal manner, it would have awarded the contract to L-3 GCS as the offeror representing the best value to the Government.

66. The Coast Guard's failure to treat offerors equally was arbitrary, capricious, an abuse of discretion, inconsistent with the terms of the RFQ and contrary to law and regulation. L-3 GCS was substantially prejudiced and directly harmed by the Coast Guard's failure to treat offerors equally. Accordingly, the contract awarded to ADCI under the RFQ must be terminated and award made to L-3 GCS.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff L-3 GCS respectfully requests that this Court enter judgment in its favor, and grant the following relief:

(1) a preliminary injunction enjoining Defendant from permitting ADCI to begin or continue performance under the Contract;

(2) a permanent injunction enjoining Defendant from permitting ADCI to begin or continue performance under the Contract, and ordering Defendant to terminate the Contract awarded to ADCI under the RFQ;

(3) a declaration that the Contract was awarded contrary to applicable procurement laws and regulation;

(4) an order that the Coast Guard reevaluate the proposals received under the RFQ and make award to L-3 GCS as the offeror representing the best value to the Government;

(5) an award to L-3 GCS of its reasonable costs and attorneys' fees incurred in the prosecution of this action, to the extent allowed by law; and

(6) such other and further relief as the Court may deem just and proper.

Dated: February 22, 2008

Respectfully submitted,

Ronald K. Henry
KAYE SCHOLER, LLP
901 15th Street, NW
Suite 1100
Washington, DC 20005
Phone: (202) 682-3500
Fax: (202) 682-3580
rhenry@kayescholer.com

*Attorney for Plaintiff L-3 Global Communications Solutions, Inc.*