08-101 C

# Exhibit 4
# Declaration of Jeff Myers

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC.,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 08-101 C |

**DECLARATION OF JEFF MYERS**

I, Jeff Myers, hereby declare as follows:

1. I am the Manager of Contracts for L-3 Global Communication Solutions, Inc. ("L-3 GCS"), a party to the above-captioned matter. My work address is 7640 Omnitech Place, Victor, New York, 14564 and phone number is (585) 742-9172.

2. The matters herein are true and correct, to the best of my knowledge, and I am available to provide live testimony on these matters, if necessary.

3. I have been employed by L-3 GCS since July 2005.

4. I am intimately aware of the issues relating to the U.S. Coast Guard's award of a contract (the "Contract") to ADCI of Delaware, LLC ("ADCI") for International Maritime Satellite ("INMARSAT") airtime and billing services under Request for Quotation No. 08-Q-TMM001 ("RFQ" or "Solicitation").

5. L-3 GCS is the current provider of INMARSAT fleet satellite airtime services for the U.S. Coast Guard.

6. On December 3, 2007, the Coast Guard notified L-3 GCS by letter that a follow-on contract had been awarded to ADCI, as the "Lowest Price, Technically Acceptable" ("LPTA") offeror.

7. On December 20, 2007, I participated in a telephonic debriefing regarding this solicitation. At the debriefing were representatives of the Coast Guard and L-3 GCS employees, including myself.

8. The Coast Guard stated that L-3 GCS was not selected because its price was higher than that of ADCI. The Coast Guard stated that, since all offers were deemed to be technically acceptable, award was made to ADCI on the basis of price and price alone.

9. The Coast Guard stated that all proposals identified STRATOS as the one and only airtime services provider, as required by the RFQ.

10. L-3 GCS explained that this requirement was an extremely important consideration given the fact that the use of another airtime provider could enable the offeror of an alternative source to submit a lower priced but such a proposal would not meet the Coast Guard's needs.

11. The Coast Guard acknowledged the validity of L-3 GCS's concern and stated that for very compelling practical reasons, the use of any other airtime provider would not and could not be considered. The Coast Guard explained that their communications network is configured in such a way that the use of any airtime services provider other than STRATOS would force them to undertake a wholesale, prohibitively expensive reconfiguration of their network.

12. L-3 GCS expressed the concern that, while the successful offeror may have bid a "STRATOS only" solution, there is reason to believe that the unstated objective is to substitute a

different service. The Coast Guard restated that STRATOS is and will remain the sole and exclusive airtime service provider for the full five (5) year effective period of the Contract.

13. The Coast Guard closed the debriefing by stating that if L-3 GCS learned that arrangements have been or are being made to substitute a non-STRATOS service provider, L-3 GCS should report the occurrence to the Coast Guard Contracting Office would act to prevent such a bait and switch substitution.

14. Because of the award to ADCI and the assurances received during the debriefing that ADCI's proposal utilized only STRATOS, L-3 GCS believed that the services it was providing to the Coast Guard would be transitioned to ADCI in the month of January 2008.

15. Instead, by the end of January 2008, none of the Fleet-55 terminals being serviced by L-3 GCS had been transitioned to ADCI. To date, L-3 GCS continues to provide airtime services to all of the Coast Guard's Fleet-55 terminals.

16. Further, on January 31, 2008, the Coast Guard advised L-3 GCS that a Fleet-55 terminal that is to be installed on the new Coast Guard Cutter "Ocracoke," will be activated under the predecessor L-3 GCS contract rather than under the contract awarded to ADCI. These events caused L-3 GCS to begin inquiries in an attempt to discover why the expected transition had not occurred.

17. On February 7, 2008, L-3 GCS's personnel attempted to contact the Coast Guard Contracting Officer regarding the anticipated switchover from L-3 GCS to ADCI. A Coast Guard communications specialist in the Telecommunications and Information Systems Command ("TISCOM") informed L-3 GCS that ADCI had proposed an unacceptable technical solution which the evaluation team must have overlooked.

18. Rather than utilizing STRATOS as the exclusive airtime services provider under the Contract as required by the RFQ, the specialist advised L-3 GCS that ADCI's proposal had actually been based on the use of Telemar Italia (ADCI's foreign parent) as its airtime services provider. This non-compliant and technically unacceptable proposal prevented the Coast Guard's Fleet-55 terminals from being able to communicate with the Coast Guard data network.

19. ADCI's use of an airtime services provider other than STRATOS was exactly what L-3 GCS had challenged during its debriefing, and was exactly what the Coast Guard had promised would not occur.

20. L-3 GCS subsequently attempted to reach the Contracting Officer on numerous occasions to confirm whether the Contract awarded to ADCI was being terminated.

21. I am also aware of the harm that will result to L-3 GCS if we are not awarded a contract under the Solicitation.

22. If the preliminary injunction is not granted, the loss of the Contract will have a very significant impact on L-3 GCS's indirect rates and cost structure. This will adversely affect both L-3 GCS's ability to obtain other contracts and the indirect costs that L-3 GCS would have to charge the Government and its other customers. There is no monetary remedy available through the Court for the revenue losses that L-3 GCS will suffer and the harm to L-3 GCS is irreparable.

23. L-3 GCS is ready, willing and able to continue providing International Maritime Satellite ("INMARSAT") airtime and billing services during the period of any preliminary injunction and therafter.

## VERIFICATION

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of February, 2008.

Jeff Myers
Manager of Contracts
L-3 Global Communication Services, Inc.