REDACTED VERSION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-101C<br>(bid protest)<br>(Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

OF COUNSEL:

TALBOT J. NICHOLAS II
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593-0001

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

June 16, 2008

Attorneys for Defendant

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . iii

DEFENDANT'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD. . . . 1

DEFENDANT'S BRIEF. . . . 2

STATEMENT OF THE ISSUES.. . . . 2

STATEMENT OF THE CASE. . . . 2

I. Nature Of The Case. . . . 2

II. Statement Of Facts.. . . . 4

A. The Contract Award.. . . . 4

B. Post-Award Events And Communications. . . . 6

SUMMARY OF THE ARGUMENT. . . . 7

ARGUMENT . . . . 9

I. The United States Is Entitled To Judgment Upon The Administrative Record.. . . 9

A. Standard Of Review.. . . . 9

B. The Coast Guard's Award Of The BPA To ADCI Was Not Arbitrary Or Capricious And Was Not In Violation Of Any Procurement Statute Or Regulation. . . . 12

1. ADCI's Proposal Met The Material Requirements Of The Coast Guard's RFQ At The Time Of Award. . . . 12

2. The Coast Guard's Evaluation Of ADCI's Proposal Was Proper .13

C. The Coast Guard's Consideration Of ADCI's Post-Award Proposal To Modify The BPA And Ultimate Rejection Of ADCI's Proposal Did Not Prejudice L-3 GCS.. . . . 16

1. Because The Coast Guard Did Not Permit ADCI To Use Another LESO, There Has Been No "Bait And Switch". . . . . . . . . . . . . . . 17

2. The Coast Guard's Post-Award Consideration Of ADCI's Proposal To Use Another LESO Did Not Constitute A Cardinal Change In the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3. Even If ADCI Intended To Use Another LESO When It Made Its Proposal, L-3 GCS Cannot Demonstrate That It Was Prejudiced When The Coast Guard Has Insisted On Compliance With The Requirements Of The BPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II. L-3 GCS Has Failed To Establish That It Is Entitled To An Injunction. . . . . . . . 25

A. Standard For Obtaining Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . 25

B. Success On The Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

C. Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D. Balance Of Harms And Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

TABLE OF AUTHORITIES

Page

Cases

A-1 Cigarette Vending, Inc. v. United States,
49 Fed. Cl. 345 (2001) . . . . . . . . . . 23

AT&T Comms., Inc. v. Wiltel, Inc.,
1 F.3d 1201 (Fed. Cir. 1993). . . . . . . . . . 20, 21

Bannum, Inc. v. U.S.,
404 F.3d 1346 (Fed. Cir. 2005). . . . . . . . . . 11, 12

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) . . . . . . . . . . 11, 15, 25

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
419 U.S. 281 (1974) . . . . . . . . . . 10

Carlson Wagonlit Travel, Comp. Gen. Dec. B-287,016,
2001 CPD ¶ 49 (Mar. 6, 2001) . . . . . . . . . . 15, 16

CCL, Inc. v. United States,
39 Fed. Cl. 780 (1997). . . . . . . . . . 20

Cleveland Telecommunications Corp. v. Goldin,
43 F.3d 655 (Fed. Cir. 1994) . . . . . . . . . . 23

Cray Research, Inc. v. Dep't of the Navy,
556 F. Supp. 201 (D.D.C. 1982). . . . . . . . . . 22

Cube Corp. v. United States,
46 Fed. Cl. 368 (2000). . . . . . . . . . 11

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . . . . . . 24, 25

Data Gen. Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996) . . . . . . . . . . 11, 23

Electro-Methods, Inc. v. United States,
7 Cl. Ct. 755 (1985). . . . . . . . . . 10

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993). . . . . . . . . 26

Four Points By Sheraton v. United States,
63 Fed. Cl. 341 (2005). . . . . . . . . 11

GraphicData, LLC v. United States,
37 Fed. Cl. 771 (1997). . . . . . . . . 21, 22

Green Mgmt. Corp. v. United States,
42 Fed. Cl. 411 (1998). . . . . . . . . 21

Hawpe Constr., Inc. v. United States,
46 Fed. Cl. 571 (2000). . . . . . . . . 25

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001). . . . . . . . . 9-11

Innovative Resources v. United States,
63 Fed. Cl. 287 (2004). . . . . . . . . 24

JWK Int'l Corp. v. United States,
52 Fed. Cl. 650 (2002) . . . . . . . . . 10, 27

Kentron Haw., Ltd. v. Warner,
480 F.2d 1166 (D.C. Cir. 1973). . . . . . . . . 11

Labat-Anderson, Inc. v. United States,
42 Fed. Cl. 806 (1999). . . . . . . . . 18

Labat-Anderson, Inc. v. United States,
50 Fed. Cl. 99 (2001). . . . . . . . . 10, 26, 27

Lion Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001). . . . . . . . . 11

Mega Constr. Co. v. United States,
25 Cl. Ct. 735 (1992) . . . . . . . . . 24

Omega World Travel, Comp. Gen. Dec. B-283,218,
2002 CPD ¶ 5 (Oct. 22, 1999). . . . . . . . . 15

Northrop Grumman Corp. v. United States,
50 Fed. Cl. 443 (2001). . . . . . . . . 20, 21, 24

Parcel 49C Ltd. Partnership v. United States,
31 F.3d 1147 (Fed. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

PEMCO World Air Servs., Comp. Gen. Dec. B-284,240.3,
2000 CPD ¶ 71 (Mar. 27, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Planning Research Corp. v. United States,
971 F.2d 736 (Fed. Cir. 1992) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Protection Strategies, Inc. v. United States,
76 Fed. Cl. 225 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rig Masters, Inc. v. United States,
70 Fed. Cl. 413 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Saratoga Dev. Corp. v. United States,
21 F.3d 445 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

TRW Envtl. Safety Sys., Inc. v. United States,
18 Cl. Ct. 33 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Unified Architecture & Eng'g, Inc. v. United States,
46 Fed. Cl. 56 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Statutes

10 U.S.C. § 2304(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## Regulations

48 C.F.R. § 8.401 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-101C (bid protest) (Judge Bush) |
| THE UNITED STATES, | ) | Protected Information To Be Disclosed Only In Accordance With The U.S. Court Of Federal Claims Protective Order |
| Defendant. | ) | |

**DEFENDANT'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's order dated April 29, 2008, defendant, the United States, respectfully requests that the Court enter judgment upon the administrative record in favor of the United States, deny plaintiff's motion for judgment upon the administrative record and request for a permanent injunction, and dismiss plaintiff's complaint. Plaintiff, L-3 Global Communications Solutions, Inc. ("L-3 GCS"), seeks to overturn the United States Coast Guard's ("Coast Guard") award of a blanket purchase agreement ("BPA") to ADCI of Delaware, LLC ("ADCI"). As set forth more fully below, the administrative record in this action demonstrates that the Coast Guard acted properly in making the award, and that L-3 GCS cannot demonstrate that the Coast Guard acted arbitrarily or capriciously in making the award. Furthermore, L-3 GCS cannot demonstrate that the Coast Guard's post-award consideration and ultimate rejection of ADCI's proposal to modify the BPA prejudiced L-3 GCS. In support of our motion for judgment upon the administrative record, we rely upon the complaint, the administrative record and supplemental

administrative record filed with the Court, and the following brief.[1]

## DEFENDANT'S BRIEF

### STATEMENT OF THE ISSUES

1. Whether ADCI's proposal was non-compliant with the Coast Guard's Request for Quotations ("RFQ") at the time of award.

2. Whether the Coast Guard properly decided that ADCI's proposal was "technically acceptable."

3. Whether the Coast Guard's post-award consideration of ADCI's proposal to modify the BPA and the Coast Guard's ultimate rejection of that proposal prejudiced L-3 GCS.

4. Whether L-3 GCS is entitled to a permanent injunction.

### STATEMENT OF THE CASE

I. Nature Of The Case

This case involves a post-award protest by L-3 GCS. L-3 GCS challenges the award of BPA No. HSCG23-08-A-TMM001 ("the BPA") to ADCI for satellite airtime and billing services for International Maritime Satellite ("INMARSAT") Mini-M and Fleet series terminals. AR 186-207.[2] The BPA was awarded on November 30, 2007. AR 191.

On February 22, 2008, L-3 GCS filed a complaint in this Court seeking injunctive and

---

[1] Pursuant to the Court's order dated April 29, 2008, this motion was due on June 13, 2008 by 5:00 PM. However, on June 13, 2008, there was a power outage in downtown Washington, D.C., and both this Court and the office of defendant's counsel were closed for the day. Accordingly, this motion was filed on the next business day by 5:00 PM pursuant to RCFC 6(a).

[2] "AR__" refers to the administrative record filed on March 3, 2008, and supplemented on March 12, 2008, March 26, 2008, April 22, 2008, and April 25, 2008.

declaratory relief. L-3 GCS alleges that the Coast Guard should not have awarded the BPA to ADCI because ADCI's proposal was technically deficient and unacceptable. Compl. ¶¶ 5-8.[3] L-3 GCS alleges that ADCI's proposal was nonresponsive and technically unacceptable because it did not propose and was not prepared to provide service through the required Land Earth Station Operator ("LESO"), and that the award to ADCI was arbitrary and capricious. Id. ¶¶ 43-47. It further alleges that the Coast Guard conducted a defective technical evaluation and that the Coast Guard improperly waived the requirements of the RFQ for the benefit of ADCI. Id. ¶¶ 50-53, 56. Finally, it alleges that the Coast Guard failed to apply the same evaluation factors to all offerors, and its failure to apply the evaluation factors equally was arbitrary and capricious. Id. at ¶¶ 64-66.

L-3 GCS seeks a permanent injunction enjoining the Government from permitting ADCI to begin or continue contract performance, and a declaration that the BPA was awarded contrary to applicable procurement laws and regulation. Compl. at pg. 12. L-3 GCS requests that the Court order the Coast Guard to reevaluate the proposals received in response to the RFQ and make award to L-3 GCS. Id.

On May 23, 2008, L-3 GCS filed its motion for judgment upon the administrative record in this matter. In its motion, L-3 GCS argues that ADCI's proposal was technically unacceptable and ineligible for contract award, that the Coast Guard conducted a defective evaluation of ADCI's proposal, that it failed to treat all offerors equally, and improperly assisted ADCI in

---

[3] "Compl.__" refers to the complaint filed by L-3 GCS on February 22, 2008.

implementing its alleged non-compliant proposal. Pl. Mot. at 18-22.[4] As we demonstrate below, L-3 GCS's arguments are without merit and the Coast Guard conducted the acquisition in accordance with all applicable statutes and regulations. Furthermore, the Coast Guard's consideration and ultimate rejection of ADCI's post-award proposal to modify the BPA did not prejudice L-3 GCS.

## II. Statement Of Facts

### A. The Contract Award

On October 22, 2007, the Coast Guard issued RFQ No. HSC523-08-Q-TMM001 for satellite airtime and billing services for INMARSAT Mini-M and Fleet series terminals under the General Services Administration ("GSA") Federal Supply Schedule ("FSS") 70 Contract. AR 53. The RFQ stated that a bidder's quotation "must contain" the following: (1) prices for airtime minutes and rates; (2) "[a] statement of compliance that the contractor can meet all the services prescribed in this RFQ;" and (3) "[a]ny other relevant information to include exceptions/assumptions related to this RFQ." AR 53. The RFQ stated that the BPA would have a five-year ordering period from November 1, 2007 to October 31, 2012, unless the BPA ceiling has been reached first. AR 56. The RFQ further stated that the Government would make the BPA award "to the responsible vendor deemed technically acceptable with the lowest quoted price determined to be fair and reasonable." AR 54.

During the bidding period, questions were received from prospective offerors on October 24 and 30, 2007, and answers from the Coast Guard were given to prospective offerors on

---

[4] "Pl. Mot.__" refers to plaintiff's motion for judgment upon the administrative record, filed with the Court on May 23, 2008.

October 25 and 31, 2007. AR 180. One question asked whether there was a mandatory LESO[5] to receive the Mobile Packet Data Service ("MPDS") and Integrated Services Data Network ("ISDN") traffic. AR 92. Another question asked which LESO the Coast Guard preferred. Id. The Coast Guard responded "Stratos" to both questions. Id. The deadline for the submission of quotations was November 2, 2007. AR 180.

The Coast Guard received three quotations from GSA vendors in response to the RFQ. The quotations were from ADCI, L-3 GCS, and

AR 100-48, 425-52. L-3 GSC was the incumbent service provider for the Coast Guard's Fleet-55 terminals. AR 116. ADCI was the incumbent service provider for the Coast Guard's Mini-M terminals. AR 100. ADCI's quotation stated that

Id. ADCI did not elaborate further.

The Coast Guard evaluated the quotations for technical compliance and price. AR 53, 182. All three quotations were found to be technically acceptable. AR 183. The technical evaluation team reached a consensus criteria rating for each quote. AR 149-50. For its price evaluation, the Coast Guard noted that ADCI proposed $28,940,576.25 as the total price for the five-year ordering period. AR 182. L-3 GCS proposed and proposed

Id. The award was made to ADCI because it presented the lowest price. AR 183-84. The BPA was awarded to ADCI on November 30, 2007. AR 191. The first task order was issued to ADCI on December 1, 2007. AR 209.

---

[5] When a Coast Guard cutter sends a voice or data communication, the signal goes to a satellite. The LESO is a facility that receives the signals from satellites and sends the data, via a T-1 line, to the Coast Guard's Communications Area Master Stations ("CAMS"), which are located on the East Coast (in Chesapeake, Virginia) and on the West Coast (in Point Reyes Station, California).

B. Post-Award Events And Communications

In December 2007, the Coast Guard began transitioning its Fleet-55 series terminals from their previous contract, which was administered by the Defense Information Technology Contracting Organization ("DITCO"), to ADCI's account. AR 327-33. On December 5, 2007, L-3 GCS requested a debriefing on the award of the BPA. AR 215. On December 20, 2007, the Coast Guard conducted a telephonic debriefing with representatives from L-3 GCS. AR 524. During this debriefing, L-3 GCS representatives inquired whether ADCI was going to use Stratos, and the Coast Guard responded that all offers complied with the Stratos requirement. AR 524-25. In December 2007 and January 2008, ADCI billed the Coast Guard for airtime services and noted on its invoices that the vendor was the LESO Stratos. AR 217-234.

In early January 2008, ADCI proposed to use Telecom Italia as the LESO for the Fleet-55 airtime service. AR 300-01, 334, 350. This proposal did not affect the Coast Guard's Mini-M terminals. AR 334. The Coast Guard's technical team administering ADCI's work under the BPA initially rejected ADCI's proposal as technically infeasible and, without consulting the contracting office, took measures to move the Fleet-55 terminals back to DITCO management while assessing ADCI's proposal. AR 342-51. Subsequently, in mid-January 2008, the contracting office was advised of ADCI's proposal and took the ADCI proposal under consideration. AR 356-58, 398-99. Prior to receiving ADCI's proposal to use another LESO for the Fleet-55 airtime service, the Coast Guard expected ADCI to use Stratos. After receiving ADCI's proposal to use Telecom Italia, one of the Coast Guard's technical evaluators noted:

> ADCI should have mentioned the technical changes that they were going to require as a part of the contract, if awarded to them, when they responded to the RFQ. None of us thought of asking about the terrestrial connectivity services since they had always used

Stratos in the past.

AR 350.

During its consideration of ADCI's proposal to use Telecom Italia, the Coast Guard researched whether ADCI's proposal would be technically feasible. AR 350, 386-87, 396-97, 402-03. ADCI provided a more detailed explanation about its proposal to use Telecom Italia as the LESO for Fleet-55 airtime service. AR 388-95. The Coast Guard contacted Stratos to see if it was possible to connect Telecom Italia's facility to Stratos' New York facilities. AR 414. Stratos responded that it would not permit such a connection. Id. After considering ADCI's proposal to use Telecom Italia as the LESO for the Fleet-55 airtime service, the Coast Guard determined that the proposal was not compatible with the Coast Guard's existing terrestrial network. AR 402-03. The Coast Guard contracting officer told ADCI it was required to use Stratos as the LESO via teleconference on February 27, 2008. AR 302. On February 29, 2008, ADCI stated to the contracting officer via telephone that it would use Stratos for the Fleet-55 terminals, which it later confirmed in writing. Id.; AR 424i. During the time that ADCI's proposal to use another LESO was under consideration, the Coast Guard never permitted ADCI to use another LESO. The transition of Fleet 55 terminals to ADCI was either halted or transitioned back to DITCO management. AR 347-48, 353-55, 361-68. As noted above, ADCI's proposal did not affect Mini-M airtime service.

## SUMMARY OF THE ARGUMENT

The Coast Guard's award of the BPA to ADCI was not arbitrary or capricious or in violation of any procurement statute or regulation. At the time of the award to ADCI on November 30, 2007, ADCI's proposal met the requirements of the solicitation. The Coast Guard

conducted a proper technical evaluation of ADCI's proposal based upon the requirements of the RFQ. The Coast Guard's award to ADCI had a rational basis because all the proposals were technically acceptable and ADCI's proposal provided the lowest price. L-3 GCS has not identified any evidence in the administrative record that the Coast Guard knew, at the time of award, that ADCI intended to use another LESO besides Stratos. In fact, the evidence demonstrates that the Coast Guard expected ADCI to use Stratos and its proposal did not indicate otherwise. Additionally, ADCI began performing the first task order using Stratos. The administrative record demonstrates that ADCI's proposal complied with the requirements of the RFQ and the award to ADCI was proper.

Additionally, the Coast Guard's post-award consideration of ADCI's proposal to modify the BPA and ultimate rejection of ADCI's proposal has not prejudiced L-3 GCS. L-3 GCS cannot demonstrate that either a "bait and switch" or a "cardinal change" occurred in this case. Because the Coast Guard never permitted ADCI to use another LESO and ADCI never used another LESO, there has not been a "switch" in this case. The Coast Guard's post-award consideration of ADCI's proposal to modify the BPA does not constitute acceptance of that proposal. The Coast Guard's post-award consideration of ADCI's proposal to modify the BPA also does not constitute a cardinal change in the contract. Only changes to a contract that have been implemented can be reviewed by this Court to determine whether they constitute cardinal changes. The Coast Guard never permitted ADCI to use another LESO, and ADCI never did so. Therefore, no change was ever implemented.

Even if ADCI intended to use another LESO when it made its proposal, L-3 GCS cannot demonstrate that it was prejudiced by ADCI's intent when the Coast Guard insisted upon

**Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order**

compliance with the requirements of the BPA. To prevail in a bid protest, the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it. L-3 GCS has failed to demonstrate that ADCI's post-award proposal to use another LESO prejudiced it when the Coast Guard only considered that proposal, and ultimately rejected it. The BPA has never been modified-- it still requires the use of Stratos as the LESO.

Finally, L-3 GCS has failed to establish that it is entitled to an injunction. It cannot establish actual success upon the merits or irreparable harm because the Coast Guard's post-award consideration and ultimate rejection of ADCI's proposal to modify the BPA did not prejudice L-3 GCS. Accordingly, L-3 GCS' request for injunctive relief should be denied and the Government's motion for judgment upon the administrative record should be granted.

## ARGUMENT

### I. The United States Is Entitled To Judgment Upon The Administrative Record

#### A. Standard Of Review

The Court possesses jurisdiction to entertain this action pursuant to the bid protest jurisdiction of the Tucker Act, 28 U.S.C. § 1491(b)(1). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). This Court reviews bid protest actions pursuant to the standards set forth in the Administrative Procedure Act ("APA"). Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). In particular, the Court must determine whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Therefore, a bid award may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the

procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332 (citations omitted). It is well-settled that the APA does not permit the Court to conduct a de novo review of agency action; rather, it limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[6] This Court has jurisdiction to consider whether an agency's award of a BPA was arbitrary and capricious. Labat-Anderson, Inc. v. United States, 50 Fed. Cl. 99, 104 (2001).

In evaluating whether an agency official's actions were rational, the "'disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.''" Impresa, 238 F.3d at 1333 (quoting Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994)). Courts have recognized that contracting officials may properly exercise wide discretion in applying procurement regulations. See id. at 1332; Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985). The arbitrary and capricious standard, by definition, acknowledges a "zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which consider[s] the relevant factors and is within the bounds of reasoned decisionmaking." JWK Int'l Corp. v. United States, 52 Fed. Cl. 650, 654 n. 8 (2002), aff'd, 56 Fed. Appx. 474 (Fed. Cir. 2003) (quotation omitted). In this regard, the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974). Therefore, as long as a rational basis is articulated and relevant factors are considered,

---

[6] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

the agency's action must be sustained. Id. This Court defers to agencies "in matters of technical adequacy of proposals upon a showing that the agency's decision has a reasonable basis." Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 329 (2000) (citing Cube Corp. v. United States, 46 Fed. Cl. 368, 386 (2000)).

When a protestor asserts a violation of regulation or procedure, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" Impresa, 238 F.3d at 1333 (quoting Kentron Haw., Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973)); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it."). "[T]o establish prejudice, a protestor must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract." Data Gen. Corp., 78 F.3d at 1563; see also Four Points By Sheraton v. United States, 63 Fed. Cl. 341 (2005).

Pursuant to RCFC 52.1,[7] this Court reviews the agency's procurement decision to determine whether it is supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005); Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 246-47 (2001); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). Unlike a Rule 56 motion, "proceeding under

[7] On June 20, 2006, based upon the Federal Circuit's decision in Bannum, Inc. v. U.S., 404 F.3d 1346 (Fed. Cir. 2005), RCFC 52.1 replaced RCFC 56.1 to avoid any confusion with the standards applicable to summary judgment.

RCFC [52.1] merely restricts the evidence to the agency record . . . ." Bannum, 404 F.3d at 1356. "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record . . . ." Tech Systems, 50 Fed. Cl. at 22; accord Bannum, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

### B. The Coast Guard's Award Of The BPA To ADCI Was Not Arbitrary Or Capricious And Was Not In Violation Of Any Procurement Statute Or Regulation

#### 1. ADCI's Proposal Met The Material Requirements Of The Coast Guard's RFQ At The Time Of Award

In its motion for judgment upon the administrative record, L-3 GCS contends that ADCI's proposal was technically unacceptable and therefore ineligible for contract award. Pl. Mot. at 18. This argument appears to be based upon the theory that ADCI's proposal, after award, to use another LESO made its proposal, at the time of award, ineligible for contract award. We will address ADCI's and the Coast Guard's post-award conduct below. However, L-3 GCS has failed to demonstrate that the Coast Guard knew that ADCI's proposal was technically unacceptable at the time of award. L-3 GCS states:

> It is undisputed that the Solicitation required each proposal to provide STRATOS as the exclusive provider of airtime services. It is also undisputed that ADCI's proposal did not provide STRATOS.

Pl. Mot. at 19. Although we do not dispute that the RFQ required the offerors to use Stratos as the LESO, AR 79, 92, we do dispute that ADCI's proposal was technically unacceptable at the time of award. Nothing in ADCI's proposal at the time of award indicated that it would not use

Stratos.

On its face, ADCI's proposal was compliant. AR 100-12. It met all the requirements of the RFQ. The proposal stated that AR 100. It provided a list of prices. AR 101-12. It noted that ADCI has AR 100. Additionally, it noted that ADCI was the incumbent contractor for the Mini-M INMARSAT service, and that ADCI Id. ADCI's proposal did not state that it was not going to use Stratos as the LESO for Fleet-55 service. Therefore, ADCI's proposal complied with the requirements of the RFQ at the time of the award.

L-3 GCS has not pointed to any evidence in the administrative record that demonstrates that the Coast Guard knew, at the time of award, that ADCI's proposal did not provide Stratos service, or that ADCI intended not to use Stratos as the LESO for Fleet-55 airtime service. Therefore, there is no evidence that ADCI's proposal failed to meet a material requirement of the RFQ at the time of award or that its proposal violated a mandatory provision of the solicitation.

2. The Coast Guard's Evaluation Of ADCI's Proposal Was Proper

L-3 GCS also contends that the Coast Guard conducted a defective evaluation of ADCI's proposal. Pl. Mot. at 19-20. This argument appears to be based upon the theory that the Coast Guard's consideration of ADCI's proposal to use another LESO after award rendered its evaluation of ADCI's proposal at the time of award defective. L-3 GCS has not demonstrated how the Coast Guard's evaluation at the time of award was defective. As stated above, the Coast Guard did not know at the time of award that ADCI was going to propose to use another LESO,

so the Coast Guard did not base its decision to award the BPA to ADCI upon that information. At the time of award, the Coast Guard expected that ADCI would

AR 100, and found ADCI to be technically acceptable. AR 149-50.

To the extent that L-3 GCS argues that the Coast Guard's technical evaluation was deficient because it knew or should have known, at the time of award, that ADCI did not intend to use Stratos, that argument is without merit. See Pl. Mot. at 5-6. As noted above, ADCI's proposal did not indicate that it was considering the use of another LESO for the Fleet-55 airtime service. AR 100-12. The administrative record shows that the Coast Guard was not aware of ADCI's proposal to use Telecom Italia until after the award of the BPA on November 30, 2007. On January 4, 2008, in response to an e-mail notification that ADCI's customer liaison, Doug Thomas, was trying to reach the Coast Guard to tell it to use Telecom Italia as the LESO for the Fleet 55 terminals, one of the BPA's technical evaluation team responded: "Nice to see this 'after the contract is awarded' information coming out of the woodwork!" AR 336. Additionally, it is clear that, at the time of award, the Coast Guard expected that ADCI would provide airtime service through Stratos because "[ADCI] had always used Stratos in the past." AR 350. Therefore, the record demonstrates that at the time of award, the Coast Guard had no knowledge that ADCI was considering another LESO besides Stratos.[8] Accordingly, its technical evaluation at the time of award was not deficient, and complied with the requirements of Federal Acquisition Regulation ("FAR") Subpart 8.4 for Federal Supply Schedules. See AR 54; 48

---

[8] In fact, L-3 GCS appears to acknowledge that the Coast Guard, at the time of award, did not know that ADCI was considering the use of another LESO for the Fleet-55 airtime service. L-3 GCS notes in its brief, "[t]he simplest answer to the cause of the unlawful award was that the Agency was hoodwinked." Pl. Mot. at 6.

C.F.R. § 8.401 et seq.

L-3 GCS relies upon the notes of one individual technical evaluator for its argument that the Coast Guard should have known that the ADCI proposal was non-compliant. Pl. Mot. at 6. This technical evaluator only noted that ADCI did not go into any details in its proposal. AR 176. However, this same technical evaluator also stated that ADCI is "the incumbent and [has] done an outstanding job to date and [is] readily accessible and very responsive." Id. All three technical evaluators found that ADCI could meet the requirements of the RFQ. AR 158, 174, 176. In any event, the individual statements of the evaluators have little value when the technical evaluation team reached a consensus evaluation for each proposal, as it did in this case. AR 149-50.

This Court reviews the consensus decision in order to determine whether the agency's evaluation had a reasonable basis. As this Court has previously noted:

> Agency evaluators may meet to discuss the relative strengths and weaknesses of proposals, as was done here, in order to reach a consensus rating, which often differs from the ratings given by individual evaluators, since such discussions generally operate to correct mistakes or misperceptions that may have occurred in the initial evaluation. . . . The overriding concern in the evaluation process is that the final scores assigned reasonably reflect the actual merits of the proposals, and not that they be mechanically traceable back to the scores initially given by the individual evaluators.

Bean Stuyvesant, 48 Fed. Cl. at 326 (citations omitted); see also Omega World Travel, Comp. Gen. Dec. B-283,218, 2002 CPD ¶ 5, 1999 WL 33456229, at *3 (Oct. 22, 1999).

The evaluation of technical proposals is a matter within the discretion of the contracting agency because the agency is responsible for defining its needs and the best method of accommodating them. Carlson Wagonlit Travel, Comp. Gen. Dec. B-287,016, 2001 CPD ¶ 49,

2001 WL 254317, at *2 (Mar. 6, 2001) (citation omitted). In reviewing an agency's evaluation, the Court examines the agency's evaluation to ensure that it was reasonable and consistent with the solicitation's stated evaluation criteria. Id. "The offeror has the burden of submitting an adequately written proposal, and an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." Id. (citing PEMCO World Air Servs., Comp. Gen. Dec. B-284,240.3, 2000 CPD ¶ 71, at 15 (Mar. 27, 2000)). An offeror's mere disagreement with the agency's overall assessment of the adequacy of a proposal falls short of meeting "the heavy burden of demonstrating that these findings were the product of an irrational process and hence arbitrary and capricious." JWK Int'l, 52 Fed. Cl. at 660 (citations omitted).

L-3 GCS has not demonstrated that the Coast Guard's technical evaluation was deficient at the time of award, or that its consensus evaluation of all the proposals was the product of an irrational process or was arbitrary and capricious. L-3 GCS' argument that the Coast Guard conducted a deficient technical evaluation is based upon the Coast Guard's post-award consideration of ADCI's proposal to modify the BPA. As we discuss below, there are ways in which L-3 GCS can challenge a post-award modification to the BPA; however, L-3 GCS has not demonstrated that the Coast Guard's evaluation of the proposals was arbitrary or capricious or not in accordance with the law at the time of award.

C. The Coast Guard's Consideration Of ADCI's Post-Award Proposal To Modify The BPA And Ultimate Rejection Of ADCI's Proposal Did Not Prejudice L-3 GCS

In this case, there is no dispute that shortly after award, ADCI informed the Coast Guard of its proposal to use another LESO for Fleet-55 airtime service, which would have materially

modified the BPA. AR 350, 388-89. There is also no dispute that the Coast Guard considered ADCI's proposed modification for almost two months and investigated whether such a modification would be possible. AR 334-43, 349-51, 386-403, 412-14. Finally, there is no dispute that the Coast Guard ultimately rejected ADCI's proposal to use another LESO and insisted that ADCI comply with the requirements of the BPA, including the requirement to use Stratos. AR 302.

There are two ways that a disappointed bidder, like L-3 GCS, can challenge an agency's post-award modification to a contract– by alleging that the awardee conducted a "bait and switch," which the agency permitted, or by alleging that a post-award modification to a contract constituted a "cardinal change," so as to require new competitive bidding under the Competition and Contracting Act ("CICA"). L-3 GCS cannot demonstrate that either a "bait and switch" or a "cardinal change" occurred in this case.

Furthermore, in order to prevail in a bid protest, a protestor must demonstrate a significant error in the procurement process <u>and</u> that it was prejudiced by this error. Here, the Coast Guard's consideration of ADCI's post-award proposal did not prejudice L-3 GCS.

1. <u>Because The Coast Guard Did Not Permit ADCI To Use Another LESO, There Has Been No "Bait And Switch"</u>

L-3 GCS alleges that ADCI conducted a "bait and switch" by representing that it intended to use Stratos, when it really intended to use another LESO– Telecom Italia. Compl. ¶ 34, 35, 45. L-3 GCS further contends that the Coast Guard's consideration of ADCI's proposal to use another LESO was "an attempt to make the bait and switch succeed." Pl. Mot. at 15. However, L-3 GCS cannot demonstrate a critical element of a "bait and switch" bid protest– an actual switch.

> The term "bait and switch" generally refers to an offeror's misrepresentation in its proposal of the personnel that it expects to use during contract performance. . . . To demonstrate a "bait and switch," a protestor must show that (1) the awardee represented in its proposal that it would rely on certain specified personnel in performing the services; (2) the agency relied on this representation in evaluating the proposal; (3) it was foreseeable that the individuals named in the proposal would not be available to perform the contract work; and (4) personnel other than those proposed are performing the services.

Unified Architecture & Eng'g, Inc. v. United States, 46 Fed. Cl. 56, 64 (2000) (citing Planning Research Corp. v. United States, 971 F.2d 736 (Fed. Cir. 1992); Labat-Anderson, Inc. v. United States, 42 Fed. Cl. 806, 855 (1999)) (additional citation omitted) (emphasis added). "Bait and switch" bid protests have been sustained where the Government "permitted and assisted" the awardee in making massive substitutions in its proposed personnel. Planning Research Corp., 971 F.2d at 739. Where the Government permitted and assisted the personnel substitution, its conduct was deemed "wholly inconsistent with its criteria for evaluating the bid proposal" because it modified the contract after award. Id. at 743.

In this case, L-3 GCS argues that ADCI's proposal to provide airtime services through another LESO was a "bait and switch." Even assuming that L-3 GCS can establish the first three elements of a "bait and switch," L-3 cannot establish that an actual switch occurred or that the BPA was modified to permit ADCI to use another LESO. In fact, the record demonstrates that ADCI was using Stratos as the LESO during the first two months of the December 2007 task order. AR 216-34. Furthermore, the Coast Guard rejected ADCI's proposal to use another LESO instead of Stratos, and it never permitted ADCI to use Telecom Italia as the LESO. AR 302, 342. After the Coast Guard became aware of ADCI's proposal to use another LESO, the Coast Guard acted quickly to remove its Fleet-55 terminals from ADCI's account because it

regarded ADCI's proposed modification as technically incompatible with its current terrestrial connectivity. AR 342, 350-51. Although the Coast Guard considered ADCI's proposal, it ultimately rejected ADCI's proposal and insisted that ADCI comply with the requirements of the BPA, including the requirement to use Stratos. AR 302. After the Coast Guard rejected ADCI's proposal to use another LESO, ADCI responded that it would comply with the requirements of the BPA and use Stratos. Id.; AR 424i. Accordingly, ADCI never performed the BPA using another LESO, and the Coast Guard never permitted ADCI to make a substitution.

The Coast Guard's consideration of ADCI's post-award proposal alone does not constitute acceptance of that proposal. Cf. Planning Research Corp., 971 F.2d at 743 (finding a "bait and switch" where Government agency encouraged and permitted the awardee's substitution of personnel after award, thereby encouraging and permitting the modification of the contract after award); Protection Strategies, Inc. v. United States, 76 Fed. Cl. 225, 235 (2007) (finding that protestor could not show the third and fourth elements of a "bait and switch" where employees that were proposed for certain positions were "serving in the capacities for which they were offered"). Accordingly, the Coast Guard's consideration of ADCI's post-award proposal alone is not sufficient to satisfy the fourth prong of the "bait and switch" test. Therefore, because L-3 GCS cannot demonstrate that an actual switch occurred, its argument that ADCI conducted a "bait and switch" is without merit.

2. The Coast Guard's Post-Award Consideration Of ADCI's Proposal To Use Another LESO Did Not Constitute A Cardinal Change In the Contract

Another method by which a disappointed bidder can challenge a post-award modification to a contract is by alleging that a modification or change that has occurred during the performance of the contract amounts to a cardinal change in the contract, so as to require new

competitive bidding under the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304(a)(1)(A). Although L-3 GCS has not alleged that ADCI's proposal to use another LESO constituted a cardinal change to the contract,[9] we will address this argument, nonetheless, to demonstrate that the Coast Guard's post-award consideration of ADCI's proposal to use another LESO did not prejudice L-3 GCS.

A disappointed-bidder may allege that the Government has relaxed and waived a contract requirement, and as a result, has violated CICA. Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 464 (2001).

> If the [G]overnment procures services through competition, but then changes the contract work being performed by the contract awardee, such changes may effectively circumvent the competition requirements of the CICA. . . . "CICA, however does not prevent modification of a contract by requiring a new bid procedure for every change. Rather only modifications outside the scope of the original contract fall under the statutory competition requirement."

Id. (quoting AT&T Comms., Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993)). When a disappointed bidder alleges that a post-award modification violated procurement law, the Court must consider whether the contract modification was within the "scope of the competition." Id. at 465 (citation omitted). The Court looks to the reasonable expectations of the bidders, and the

---

[9] L-3 GCS may not have raised this argument because it challenges the propriety of the award of the original BPA based upon the post-award conduct of ADCI and the Coast Guard. Pl. Mot. at 2. A cardinal change argument is based upon the fact that changes to the previously awarded contract represent work that is completely separate from the work that has already been awarded in that contract. CCL, Inc. v. United States, 39 Fed. Cl. 780, 789 (1997). "The protest does not assail the propriety of the award of the original contract that was cardinally changed, but instead demands initial competition on the [new] work." Northrop Grumman, 50 Fed. Cl. at 456. Because L-3 GCS is alleging that the Coast Guard waived mandatory requirements of the RFQ by considering ADCI's post-award proposal to modify the BPA, L-3 GCS appears to be making a cardinal change-like argument.

Government must show that it adequately advised the bidders that such a change might occur. Id. (citing Wiltel, 1 F.3d at 1207). "Cardinal change analysis is primarily a fact-based question, and therefore each case is considered individually on the totality of its unique circumstances." Northrop Grumman, 50 Fed. Cl. at 465 (citing Green Mgmt. Corp. v. United States, 42 Fed. Cl. 411, 430 (1998)).

> [W]hen contract language requires very specific products or services, and bids for the contract were keyed primarily to those requirements, changing such requirements after contract award will be deemed outside the scope [of the solicitation], even if such a change does not significantly alter the work being performed.

Id. at 466 (citations omitted) (emphasis added).

In this case, even assuming that ADCI proposed a cardinal change to the BPA– the use of another LESO besides Stratos, there has not been a cardinal change to the contract that violates CICA. There has not been a cardinal change because the Coast Guard did not accept ADCI's proposal to use another LESO. The Coast Guard only considered ADCI's proposal, but ultimately rejected it. AR 302. Only changes to a contract that have been implemented can be reviewed by this Court to determine whether they constitute cardinal changes. Northrop Grumman, 50 Fed. Cl. at 468 n.45 (citing GraphicData, LLC v. United States, 37 Fed. Cl. 771, 782-83 (1997)).

In a case with facts similar to this, where a modification to the contract was proposed, but ultimately rejected, this Court held that "a disappointed bidder protesting an alleged modification must prove that an actual modification occurred." GraphicData, 37 Fed. Cl. at 783. In that case, it was the Government agency that proposed a modification to the contract after award. Id. at 776. However, the awardee never agreed to or signed the Government's proposed modification.

Id. at 778. Just as L-3 GCS does now, the protestor in that case essentially asked the Court to view the contract as if it had been modified and to determine whether the hypothetical modification prejudiced plaintiff. Id. at 782. However, the Court found that the proposed modification alone did not prejudice the protestor. Id. at 783. The Court made this determination even though the awardee only rejected the Government's proposed modification after the protestor filed its bid protest. Id. The Court noted that "an actual modification that exceeds the scope of the original contract harms disappointed bidders because the modification prevents the disappointed bidders from competing for what is essentially a new contract." Id. However, as in this case, because no modification to the contract was executed, the Court found that the protestor competed for the same contract that the awardee was currently performing. Id. The Court further noted that "'[c]ourts should be reluctant to intervene absent a clear showing of illegality by the party attempting to overturn the agency determination.'" Id. (quoting Cray Research, Inc. v. Dep't of the Navy, 556 F. Supp. 201, 203 (D.D.C. 1982)).

Similarly, in this case, there has been no actual modification to the contract. Even though the Coast Guard considered ADCI's proposal to use another LESO and only rejected it after L-3 GCS filed this protest, L-3 GCS has failed to demonstrate an actual modification to the BPA that prejudiced it, or that it lacked a full and fair opportunity to compete for the BPA. Accordingly, L-3 GCS has failed to demonstrate a cardinal change in the BPA in violation of CICA.

3. Even If ADCI Intended To Use Another LESO When It Made Its Proposal, L-3 GCS Cannot Demonstrate That It Was Prejudiced When The Coast Guard Has Insisted On Compliance With The Requirements Of The BPA

As noted above, the administrative record in this case demonstrates that the Coast Guard was not aware of ADCI's proposal to use another LESO until after the award of the BPA. AR

334, 336, 350. The record also demonstrates that the Coast Guard considered ADCI's proposal to use another LESO after award. AR 334-43, 349-51, 386-403, 412-14.

Basically, the dispute in this case centers around one issue. L-3 GCS contends that as soon as ADCI requested to use Telcom Italia as the LESO instead of Stratos, the Coast Guard should have found ADCI's proposal non-compliant and set aside the BPA award. However, the Government had another option– it could reject ADCI's proposal to use another LESO and insist upon compliance with the requirements of the BPA. Because ADCI agreed to comply with the requirements of the BPA, AR 424i, the Coast Guard ensured that there was no "prejudice" to other bidders. Furthermore, as noted above, the Coast Guard never permitted ADCI to use another LESO, even when it was considering ADCI's proposal to use Telecom Italia; therefore, L-3 GCS was never prejudiced. See AR 347-48, 353-55, 361-68.

To prevail in a bid protest, the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it. Data Gen. Corp., 78 F.3d at 1562; see also Cleveland Telecommunications Corp. v. Goldin, 43 F.3d 655, 659 (Fed. Cir. 1994) (a possible regulatory violation "did not prejudice [pre-award bid protestor] in any way and does not provide grounds for terminating the procurement"); TRW Envtl. Safety Sys., Inc. v. United States, 18 Cl. Ct. 33, 67 (1989) ("Generally, the requirement of proving prejudice prevents an unsuccessful bidder from overturning an award due to a harmless violation of a statute or regulation on the part of the government.").

L-3 GCS cannot demonstrate that ADCI's proposal to use another LESO prejudiced it when the Coast Guard only considered that proposal, and ultimately rejected it. Cf. A-1 Cigarette Vending, Inc. v. United States, 49 Fed. Cl. 345, 354-55 (2001) (The agency's mere

consideration of a regulation, short of implementation, did not effectuate a regulatory taking). Even if ADCI intended to use another LESO, the award of the BPA to ADCI did not prejudice L-3 GCS when the Coast Guard never permitted ADCI to use another LESO and ultimately rejected ADCI's proposal to use another LESO. Presently, the BPA has the same terms as it had when issued – it requires Stratos as the LESO. L-3 GCS has failed to demonstrate that it was prejudiced by the award of the BPA to ADCI.

Additionally, L-3 GCS appears to ask this Court to oversee the Coast Guard's administration of the BPA. In its motion for judgment upon the administrative record, L-3 GCS states:

> It is completely unnecessary to discuss at length the types of quid pro quo that the agency can make available to ADCI in exchange for its untimely proposal amendment. Favorable change orders? Contract extensions? Favorable treatment in claims and disputes? Waiver of the STRATOS requirement after the heat dies down? All are possible, all are improper, and all demonstrate the need for the fundamental principle that a non-compliant proposal cannot be accepted and a proposal cannot be retroactively amended after the closing date for submission. The award to ADCI must be cancelled and the contract awarded to L-3 GCS.

Pl. Mot. at 16. L-3 GCS's arguments bring the Court "perilously close to engaging in outright contract administration. It is within the prerogative of the parties to make continuous efforts to comply with the requirements of a solicitation and contract when problems arise." Northrop Grumman, 50 Fed. Cl. at 467 (citation omitted). Furthermore, it is well established that the Government "is entitled to strict compliance with the contract requirements." See Mega Constr. Co. v. United States, 25 Cl. Ct. 735, 744 (1992) (citing cases). Additionally, it is well settled that this Court does not have the authority to select a contractor or order the award of a contract to a protestor. Innovative Resources v. United States, 63 Fed. Cl. 287, 290 n.5 (2004); see also CW

Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order

Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 559 (2000) (citing Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994)).

Because L-3 GCS cannot demonstrate that the Coast Guard's award of the BPA to ADCI or post-award consideration of ADCI's proposal to use another LESO prejudiced L-3 GCS, the Court should deny this bid protest, and grant our motion for judgment upon the administrative record.

## II. L-3 GCS Has Failed To Establish That It Is Entitled To An Injunction

Although L-3 GCS did not address its request for injunctive relief in its motion for judgment upon the administrative record, L-3 GCS's complaint before this Court requests a permanent injunction enjoining the Coast Guard "from permitting ADCI to begin or continue performance under" the BPA. Compl. at pg. 12. L-3 GCS has failed to establish that it is entitled to a permanent injunction.

### A. Standard For Obtaining Injunctive Relief

"If a plaintiff demonstrates that a procurement was unlawful, the issue then before the Court is whether to grant permanent injunctive relief." Bean Stuyvesant, 48 Fed. Cl. at 320. In order to obtain a permanent injunction, a plaintiff must establish: (1) actual success on the merits; (2) that it will suffer irreparable injury if injunctive relief were not granted; (3) that, if the injunction were not granted, the harm to plaintiff outweighs the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Id. at 320-21 (citing Hawpe Constr., Inc. v. United States, 46 Fed. Cl. 571, 582 (2000)) (additional citation omitted).

### B. Success On The Merits

As demonstrated above, L-3 GCS has not demonstrated that the Coast Guard's award of

the BPA to ADCI was arbitrary, capricious, or in violation of a procurement statute or regulation. Even if there was some error in the procurement process by the Coast Guard's post-award consideration of ADCI's post-award proposal to use another LESO, L-3 GCS has not demonstrated that it was prejudiced by that error because the Coast Guard never permitted L-3 GCS to use another LESO, AR 347-48, 353-55, 361-68, and ultimately rejected ADCI's proposal to use another LESO. AR 302. In response, ADCI stated that it would comply with the requirement to use Stratos. AR 424i.

The Coast Guard's award of the BPA to ADCI on November 30, 2007 had a rational basis because ADCI was the lowest price technically acceptable offer. The Coast Guard's actions were within the grounds of reasoned decisionmaking. See Rig Masters, Inc. v. United States, 70 Fed. Cl. 413, 420 (2006). Absent a showing that L-3 GCS is likely to prevail upon the merits, L-3 GCS is not entitled to a preliminary injunction "'unless some extraordinary injury or strong public interest is also shown.'" Labat-Anderson, 50 Fed. Cl. at 111 (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)).

C. Irreparable Harm

L-3 GCS alleges that it was substantially prejudiced and directly harmed by the Coast Guard's failure to treat all offerors equally. Compl. ¶ 66; Pl. Mot. at 21-22. However, L-3 GCS fails to establish how the Coast Guard treated offerors differently. The Coast Guard required ADCI, like L-3 GCS and Satcom, to use Stratos as the LESO. AR 302.

L-3 GCS was not harmed by the Coast Guard's post-award consideration of ADCI's proposal to use another LESO because the Coast Guard never permitted ADCI to use another LESO, and ultimately rejected ADCI's proposal to modify the BPA. Additionally, the entire

Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order

time that the Coast Guard considered ADCI's proposal to use another LESO, L-3 GCS was able to keep performing its incumbent contract for the Fleet-55 airtime service through DITCO. See AR 352.

Although lost profits and a lost opportunity to compete may constitute irreparable injury, see Labat-Anderson, 50 Fed. Cl. at 110 (citations omitted), L-3 GCS had the same opportunity to compete for the BPA as ADCI. Because there was no prejudicial violation of procurement law, L-3 GCS has not suffered an irreparable injury.

D. Balance Of Harms And Public Interest

In this case, the balance of harms weighs in favor of the Government. For almost six months now, the status of the BPA award has been in flux. See Labat-Anderson, 50 Fed. Cl. at 110 (finding balance of financial and other harms weighed in favor of Government where the status of a BPA award had been in flux for more than six months). First, the Coast Guard delayed transition of the Fleet-55 terminals to ADCI's account while it considered ADCI's proposal to use another LESO. AR 353-54. Second, since the Coast Guard rejected ADCI's proposal to use another LESO and ADCI stated that it would continue to perform the BPA using Stratos, AR 424i, the status of the BPA award has been in flux because of this bid protest. Because of the duration of L-3 GCS's bid protest, the Coast Guard has not been able to take advantage of the lower rates for airtime service for Fleet-55 terminals that are provided in the BPA. The public interest would be served by allowing the Coast Guard to proceed with this BPA, which was awarded to the contractor offering the best value. See Labat-Anderson, 50 Fed. Cl. at 110 (citing JWK Int'l Corp.. 49 Fed. Cl. at 370).

## CONCLUSION

For these reasons, we respectfully request the Court to grant defendant's motion for judgment upon the administrative record, deny plaintiff's cross-motion and request for injunctive relief, and dismiss plaintiff's complaint.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

TALBOT J. NICHOLAS II
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593-0001

June 16, 2008

Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2008, a copy of the foregoing "DEFENDANT'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad