**REDACTED VERSION**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-101C (bid protest) (Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**


GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

OF COUNSEL:

TALBOT J. NICHOLAS II
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593-0001

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643


July 17, 2008

Attorneys for Defendant

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . ii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD . . . . . 1

MEMORANDUM OF LAW . . . . . 1

ARGUMENT . . . . . 1

I. ADCI's Proposal Was Compliant On Its Face And The Coast Guard Never Waived Or Relaxed Any Requirements Of The Request For Quotations . . . . . 1

A. ADCI's Proposal Was Compliant On Its Face And The Coast Guard Properly Evaluated ADCI's Proposal In Accordance With The Criteria Set Forth In The RFQ . . . . . 3

B. The BPA Awarded To ADCI Requires The Use Of Stratos . . . . . 4

C. The Fact That The Coast Guard Learned After Award That ADCI's Price Proposal Was Based Upon Another LESO For Fleet-55 Service Does Not Make ADCI's Proposal Non-Compliant When The Coast Guard Never Waived Or Relaxed The Requirements Of The RFQ . . . . . 6

II. L-3 GCS Was Not Prejudiced By The Coast Guard's Post-Award Consideration Of ADCI's Proposal To Use Another LESO When The Coast Guard Ultimately Rejected That Proposal And The BPA Was Never Modified . . . . . 10

CONCLUSION . . . . . 12

# TABLE OF AUTHORITIES

Page

## CASES

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999). . . . . . . . . . 7, 9, 10

Beta Analytics Int'l, Inc. v. United States,
44 Fed. Cl. 131 (1999). . . . . . . . . . passim

Dubinsky v. United States,
44 Fed. Cl. 509 (1999). . . . . . . . . . 7

E.W. Bliss Co. v. United States,
77 F.3d 445 (Fed. Cir. 1996). . . . . . . . . . 4, 5

GraphicData, LLC v. United States,
37 Fed. Cl. 771 (1997). . . . . . . . . . 9

HWA, Inc. v. United States,
78 Fed. Cl. 685 (2007). . . . . . . . . . 4

Mangi Envtl. Group, Inc. v. United States,
47 Fed. Cl. 10 (2000). . . . . . . . . . 7, 10, 12

Northrop Grumman Corp. v. United States,
50 Fed. Cl. 443 (2001). . . . . . . . . . 11

Tech Sys., Inc. v. United States,
50 Fed. Cl. 216 (2001). . . . . . . . . . 6

Statistica, Inc. v. Christopher,
102 F.3d 1577 (Fed. Cir. 1996). . . . . . . . . . 6

## STATUTES

28 U.S.C. § 1491(b)(4). . . . . . . . . . 7

## REGULATIONS

48 C.F.R. § 8.405-2(c)(2)(iii). . . . . . . . . . 5

48 C.F.R. § 8.405-2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

48 C.F.R. § 15.206(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

48 C.F.R. § 52.212-4(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ADDITIONAL AUTHORITIES**

Martin Marietta Corp., 69 Comp. Gen. 168, B-233742.4,
90-1 CPD ¶ 132, 1990 WL 269506 (Jan. 31, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Multi-Spec Prods. Group Corp., Comp. Gen. Dec. B-245156, B-245156.2,
92-1 CPD ¶ 171, 1992 WL 30851 (Feb. 11, 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tri-State Gov't Servs., Inc., Comp. Gen. Dec. B-277315,
97-2 CPD ¶ 143, 1997 WL 709308 (Oct. 15, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Universal Yacht Servs., Inc., Comp. Gen. Dec. B-287071,
2001 CPD ¶ 74, 2001 WL 360402 (Apr. 4, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| L-3 GLOBAL COMMUNICATIONS SOLUTIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-101C<br>(bid protest)<br>(Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rules 52.1 and 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC") and this Court's order, dated June 17, 2008, defendant, the United States, respectfully submits this reply in support of its motion for judgment upon the administrative record, filed on June 16, 2008. In support of this reply, we rely upon the administrative record filed in this case, our motion for judgment upon the administrative record, and the following memorandum of law.

MEMORANDUM OF LAW

ARGUMENT

I. ADCI's Proposal Was Compliant On Its Face And The Coast Guard Never Waived Or Relaxed Any Requirements Of The Request For Quotations

In our cross motion for judgment upon the administrative record, we argued, among other things, that there has been no "bait and switch" in the acquisition that is the subject of this bid protest. Def. Mot. at 17-19.[1] In its response in opposition to our cross motion for judgment upon

[1] "Def. Mot.__" refers to defendant's cross motion for judgment upon the administrative record, filed with the Court on June 16, 2008.

the administrative record, plaintiff, L-3 Global Communications Solutions, Inc. ("L-3 GCS"), appears to abandon its argument that the awardee, ADCI of Delaware, LLC ("ADCI"), of the Blanket Purchase Agreement ("BPA") that is the subject of this bid protest, conducted a "bait and switch." Instead, L-3 GCS's sole argument now appears to be that ADCI's proposal was non-compliant; therefore, the award to ADCI was unlawful and must be cancelled. Pl. Opp. at 20-25.[2]

L-3 GCS contends that the administrative record "unambiguously and indisputably" establishes that ADCI did not propose and did not intend to provide Stratos for the Fleet-55 terminals. Pl. Opp. at 2. We disagree. To support its argument, L-3 GCS relies upon documents and e-mail communications in the administrative record that occurred after the BPA award. Id. at 3-7. The administrative record only shows that after award, when ADCI proposed to use Telecom Italia as the Land Earth Station Operator ("LESO") for the Fleet-55 terminals, United States Coast Guard ("Coast Guard") personnel speculated that ADCI's price quotation was based upon the use of Telecom Italia. AR 334, 349, 350, 361, 396. There is no document in the administrative record from ADCI confirming that its price proposal was based upon the use of Telecom Italia. ADCI is not a party to this bid protest. We have no direct evidence from ADCI about how its price proposal was formulated. After award, Coast Guard personnel may have thought or believed that ADCI's price proposal was based upon the use of Telecom Italia; however, that does not make ADCI's proposal noncompliant.

---

[2] "Pl. Opp.__" refers to plaintiff's opposition to defendant's cross motion for judgment upon the administrative record and plaintiff's reply to defendant's response in opposition to plaintiff's motion for judgment upon the administrative record, filed with the Court on July 7, 2008.

In this case, there is no evidence in the administrative record that ADCI's proposal was facially noncompliant with the requirements of the Request for Quotations ("RFQ") or that the Coast Guard ever waived a requirement of the RFQ. Before ADCI's proposal can be found to be noncompliant, it must be shown that the proposal was facially noncompliant and the Coast Guard waived or relaxed the mandatory requirements of the RFQ in favor of ADCI.

A. ADCI's Proposal Was Compliant On Its Face And The Coast Guard Properly Evaluated ADCI's Proposal In Accordance With The Criteria Set Forth In The RFQ

As we noted in our motion for judgment upon the administrative record, ADCI's proposal was compliant on its face. Def. Mot. at 13; AR 100-12.[3] It met all the requirements of the RFQ. L-3 GCS contends that ADCI's proposal was "artfully drafted" because it contained no promise to use Stratos as the LESO for the Fleet-55 terminals. Pl. Opp. at 7-8. However, ADCI was not required to specifically state that it would use Stratos as the LESO for the Fleet-55 terminals. This was not a complex acquisition. The RFQ only required proposals to contain "[a] statement of compliance that the contractor can meet all services prescribed in this RFQ." AR 53. ADCI's proposal met this requirement. AR 100, 107.

L-3 GCS further contends that the statement in ADCI's proposal that it ******************************************************************* AR 100, 107, means that it will not provide Stratos service for the Fleet-55 terminals under the doctrine of expressio unius est exclusio alterius.[4] Pl. Opp. at 8. L-3 GCS wants the Coast Guard to "read

[3] "AR__" refers to the administrative record filed on March 3, 2008, and supplemented on March 12, 2008, March 26, 2008, April 22, 2008, and April 25, 2008.

[4] A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative. It is normally used in cases of statutory

between the lines" of ADCI's proposal. However, there was no requirement for the Coast Guard to do so. The Coast Guard properly evaluated all three proposals under the requirements of the RFQ. AR 149-50, 180-85.

The Federal Acquisition Regulation ("FAR") section that addresses ordering procedures for services requiring a statement of work for Federal supply schedule acquisitions requires proposals to be evaluated under the evaluation criteria provided in the RFQ. See FAR § 8.405-2(d), 48 C.F.R. § 8.405-2(d) ("The ordering activity shall evaluate all responses received using the evaluation criteria provided to the schedule contractors."). This Court "'examine[s] the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria.'" HWA, Inc. v. United States, 78 Fed. Cl. 685, 701 (2007) (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996)). The Coast Guard's evaluation of the quotes it received from ADCI, L-3 GCS, and ************************************** was reasonable and consistent with the evaluation criteria. The Coast Guard's award of the BPA to ADCI on November 30, 2007 was rational because ADCI's proposal was technically acceptable and was ************ less than the next lowest offer or, L-3 GCS. AR 182-83.

B. The BPA Awarded To ADCI Requires The Use Of Stratos

The BPA awarded to ADCI on November 30, 2007, requires the use of Stratos. The RFQ required the contractor to use Stratos as the LESO. See AR 75, 92. ADCI's proposal stated that it ***************************************** AR 100, 107. The task orders that are to be placed against the BPA are firm-fixed price. AR 192. Additionally, the BPA has a firm fixed-price ceiling of $28,940,576.25, which is in accordance with the FAR for Federal Supply

---

interpretation. Black's Law Dictionary 602 (7th ed. 1999).

Schedule contracts. Id.; see FAR § 8.405-2(c)(2)(iii), 48 C.F.R. § 8.405-2(c)(2)(iii) ("The order activity should request that contractors submit firm-fixed prices to perform the services identified in the statement of work."). Therefore, ADCI is required to use Stratos as the LESO for all International Maritime Satellite ("INMARSAT") billing services for the firm fixed-price set forth in its proposal. If ADCI fails to use Stratos for either Fleet-55 or Mini-M airtime service, that would be grounds for contract termination. See 48 C.F.R. § 52.212-4(1), (m) (incorporated into the BPA at AR 200).

L-3 GCS relies upon a draft document written by Sonia Kendall of the Coast Guard to argue that the BPA requires the use of Telecom Italia as the LESO for the Fleet-55 terminals. Pl. Opp. at 5 (citing 402). This draft document was only circulated internally at the Coast Guard. See AR 400-05. It was a draft response to ADCI's proposal to use Telecom Italia. See AR 388-95. Although this draft memorandum states that the BPA "requires the use of Telecom Italia as the [LESO] Partner for the provision of Fleet 55 airtime section," this statement has little value because it was not made by the contracting officer.[5] The contracting officer is the only person with authority to modify the BPA. AR 207. Contracting Officer Waldron O'Brien responded to ADCI's proposal to use another LESO via teleconference on February 27, 2008. Mr. O'Brien "reiterated the need [for ADCI] to meet the requirements of the BPA, including the requirement to use Stratos . . . ." AR 302. Accordingly, the Coast Guard properly insisted that ADCI comply with the requirements of the BPA, including the requirement to use Stratos.

[5] The two contracting officers involved with the award and administration of the BPA are Carmen Correa and Waldron O'Brien. AR 188, 302.

C. The Fact That The Coast Guard Learned After Award That ADCI's Price Proposal Was Based Upon Another LESO For Fleet-55 Service Does Not Make ADCI's Proposal Non-Compliant When The Coast Guard Never Waived Or Relaxed The Requirements Of The RFQ

In this case, the Coast Guard learned after award that ADCI wanted to use Telecom Italia as the LESO for Fleet-55 airtime service. AR 334, 336, 350, 361, 418. ADCI provided the Coast Guard with details on its proposal to use Telecom Italia as the LESO for the provision of Fleet-55 airtime service approximately two months after award. AR 388-89. There is no dispute that the Coast Guard considered whether using Telecom Italia as the LESO for Fleet-55 airtime service would be technically feasible. AR 350, 387, 414. The Coast Guard correctly decided that it would require ADCI to meet the terms of the BPA, which required ADCI to use Stratos as the LESO. AR 302. In response, ADCI stated that it would comply with the requirement of the BPA to use Stratos. AR 424i.[6]

In bid protest cases, this Court evaluates the procuring agency's conduct to determine whether it was arbitrary and capricious. Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 221 (2001) (citing 28 U.S.C. § 1491(b)(4)). "To prevail under the arbitrary and capricious standard, a frustrated offeror is required to establish that (1) the Government officials involved in the procurement process were without a rational and reasonable basis for their decision, or (2) the

[6] Contrary to L-3 GCS' argument, ADCI's statement that it "will continue to provide Inmarsat airtime billing services utilizing the Stratos LES, under BPA No. HSCG-23-08-A-TMM001; and Task Order No. HSCG-23-08-F-TMM002," AR 424i, is not "another artful dodge by ADCI." Pl. Opp. at 23 n.3. Prior to the Coast Guard halting the transition of Fleet-55 terminals to ADCI, AR 353-54, ADCI was performing the first task order using Stratos as the LESO for both the Fleet-55 and the Mini-M terminals. AR 216-34. Because the Fleet-55 terminals had to be transitioned from Defense Information Technology Contracting Organization ("DITCO") management, only a few of them were in ADCI's account by early 2008. See AR 216, 225, 235, 241-42, 327, 368.

procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations." Id. (citing Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996)) (additional citations omitted). If a protestor "can demonstrate an instance in which a procuring official failed to abide by a mandatory solicitation provision, the protestor will prevail, provided that it can demonstrate that, but for the violation, it had a substantial chance to receive the award." Beta Analytics Int'l, Inc. v. United States, 44 Fed. Cl. 131, 138 (1999).

L-3 GCS contends that the Coast Guard's award decision was unlawful based upon information that the Coast Guard received after the award. Pl. Opp. at 3-7, 13-16. L-3 GCS argues that when ADCI proposed after award to use Telecom Italia as the LESO for Fleet-55 service, that made ADCI's proposal retroactively non-compliant and the award invalid. Id. at 2-7. However, the cases that L-3 GCS relies upon for its argument that ADCI's proposal was non-compliant are cases where the proposal was non-compliant on its face and the Government waived or relaxed a solicitation requirement. See, e.g., Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367-68 (Fed. Cir. 1999) (Agency waived a testing requirement and awarded contract to proposal that was non-compliant on its face); Mangi Envtl. Group, Inc. v. United States, 47 Fed. Cl. 10, 17-18 (2000) (Agency relaxed solicitation requirements by accepting proposal that did not contain information that was required by solicitation); Dubinsky v. United States, 44 Fed. Cl. 509, 512 (1999) (Agency accepted proposal that on its face failed to meet two mandatory requirements of solicitation); Beta Analytics, 44 Fed. Cl. at 139 (Agency awarded contract based upon a facially noncompliant proposal); Universal Yacht Servs., Inc., Comp. Gen. Dec. B-287071, B-287071.2, 2001 CPD ¶ 74, 2001 WL 360402 (Apr. 4, 2001) (same); Tri-State Gov't Servs., Inc., Comp. Gen. Dec. B-277315, B-277315.2, 97-2 CPD ¶ 143,

1997 WL 709308 (Oct. 15, 1997) (same); Multi-Spec Prods. Group Corp., Comp. Gen. Dec. B-245156, B-245156.2, 92-1 CPD ¶ 171, 1992 WL 30851 (Feb. 11, 1992) (Agency waived testing requirement and award was made to nonconforming proposal); Martin Marietta Corp., 69 Comp. Gen. 168, B-233742, B-233742.4, 90-1 CPD ¶ 132, 1990 WL 269506 (Jan. 31, 1990) (Agency waived requirement of solicitation and awarded contract to nonconforming proposal).

In contrast to these cases, here, the Coast Guard awarded the BPA based upon a proposal that was facially compliant and the Coast Guard never waived a requirement of the RFQ. As discussed above, ADCI's proposal was facially compliant. As we noted in our cross-motion for judgment upon the administrative record, the Coast Guard never permitted ADCI to use another LESO. Def. Mot. at 18-19. Additionally, during the first few months of the first task order, ADCI performed the BPA using Stratos as the LESO for both Mini-M and Fleet-55 airtime service. AR 216-43.[7] The Coast Guard halted the transition of Fleet-55 terminals to ADCI's account shortly after it learned of ADCI's proposal to use another LESO. AR 334, 342, 345-46. ADCI continued to manage the Fleet-55 terminals that had already been placed in its account until they could be transferred back to DITCO management. AR 368. After the Coast Guard considered and ultimately rejected ADCI's proposal to use another LESO, ADCI confirmed that it would provide INMARSAT airtime billing services through Stratos, as required under the BPA. AR 302. Therefore, the Coast Guard never waived a mandatory requirement of the RFQ in favor of ADCI to the detriment of the other bidders. See Def. Mot. at 23-24 (arguing that the

---

[7] L-3 GCS incorrectly states that only three Fleet-55 terminals were serviced by ADCI after the December 2007 task order was issued. Pl. Opp. at 17. In fact, ADCI provided airtime service for five Fleet-55 terminals using Stratos as the LESO before this bid protest was filed. Those terminals were Cuttyhunk, Drummond, Galveston Island, Kiska, and Sitkinak. AR 418, 216, 225, 235, 241-42; Ex. A. (refers to exhibit attached to this reply).

Coast Guard's post-award consideration of ADCI's proposal to use another LESO did not prejudice L-3 GCS when it was ultimately rejected and the Coast Guard never modified the BPA); see also GraphicData, LLC v. United States, 37 Fed. Cl. 771, 783 (1997) (proposed modification to contract did not prejudice protestor where modification was never accepted).

L-3 GCS argues that it does not matter when the Coast Guard learned of ADCI's proposal to use another LESO. Pl. Opp. at 25. It further contends "a non-compliant proposal cannot form the basis of a valid award and it does not matter when the non-compliance is discovered." Id. However, the cases that L-3 GCS cites in support of this argument are all cases where the Government either waived or relaxed a mandatory requirement of the solicitation by accepting a proposal that was facially non-compliant. We have neither situation in this case. ADCI's proposal was facially compliant and the Coast Guard never waived or relaxed a mandatory requirement of the RFQ. See Def. Mot. at 12-13, 18-19.

We are not arguing, as L-3 GCS suggests, that an agency can accept a non-compliant proposal simply "by avoiding 'knowledge' of the non-compliance prior to award." Pl. Opp. at 26. An agency cannot accept a proposal that is non-compliant on its face because such acceptance would result in the agency relaxing or waiving solicitation requirements in favor of one bidder. See Alfa Laval, 175 F.3d at 1367-68; Beta Analytics, 44 Fed. Cl. at 139. Nor can an agency relax or waive a mandatory solicitation requirement in favor of one bidder. See 48 C.F.R. § 15.206(a) ("When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation."); Mangi Envtl., 47 Fed. Cl. at 18. However, the distinction in this case is that the Coast Guard neither accepted a proposal that was non-compliant on its face nor relaxed or waived a

mandatory solicitation requirement in favor of ADCI. Therefore, L-3 GCS has failed to demonstrate that "a procuring official failed to abide by a mandatory solicitation provision." Beta Analytics, 44 Fed. Cl. at 138.

## II. L-3 GCS Was Not Prejudiced By The Coast Guard's Post-Award Consideration Of ADCI's Proposal To Use Another LESO When The Coast Guard Ultimately Rejected That Proposal And The BPA Was Never Modified

In our cross-motion for judgment upon the administrative record, we argued that L-3 GCS was not prejudiced by the Coast Guard's post-award consideration of ADCI's proposal to use another LESO. Def. Mot. at 22-25. In response, L-3 GCS contends that it was prejudiced by the Coast Guard's acceptance of ADCI's non-compliant proposal. Pl. Opp. at 27-28.

It is not disputed that L-3 GCS's proposal was technically acceptable and provided the second-lowest price proposal. AR 182. However, L-3 GCS has not shown a significant, prejudicial error in the procurement process. See Alfa Laval, 175 F.3d at 1367. The Coast Guard accepted a proposal that was facially compliant with the requirements of the RFQ. AR 100-12. The Coast Guard awarded a firm fixed-price BPA to ADCI. AR 192. After award, ADCI began performing the first task order in compliance with the requirements of the BPA. AR 216-44; Ex. A. The Coast Guard learned after award that ADCI wanted to use another LESO. AR 334, 350. The Coast Guard never waived or relaxed the requirement for ADCI to use Stratos as the LESO for Fleet-55 airtime service, and properly insisted that ADCI comply with the requirements of the BPA. AR 302. When the Government awards a contract based upon a facially non-compliant proposal, it relaxes or waives the requirements in the solicitation to the detriment of the other bidders who bid pursuant to the requirements of the solicitation. See Beta Analytics, 44 Fed. Cl. at 139.

In this case, there was no detriment to the other bidders because the Coast Guard never relaxed or waived the requirement to use Stratos as the LESO for Fleet-55 airtime service. The Coast Guard awarded the BPA to ADCI based upon its facially compliant proposal, assuming that it would use Stratos. AR 149-50, 357, 525. The BPA awarded to ADCI has a firm-fixed price ceiling. AR 192. ADCI started performing the first task order using Stratos as the LESO. AR 216-44, Ex. A. The Coast Guard properly insisted that ADCI use Stratos in accordance with the BPA. AR 302. There has never been a waiver of the RFQ or BPA requirements to the detriment of the other bidders, including L-3 GCS. There has been no prejudicial violation of a procurement statute or regulation by the Coast Guard.

This Court should decline to get involved in the Coast Guard's administration of the BPA. "It is within the prerogative of the parties to make continuous efforts to comply with the requirements of a solicitation . . . ." Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 467 (2001). The Coast Guard properly insisted that ADCI comply with the requirements of the RFQ. AR 302. The Coast Guard also properly declined to let ADCI perform the BPA contrary to its requirements. AR 345-46. Accordingly, L-3 GCS cannot demonstrate that it was prejudiced by the Coast Guard's post-award consideration of ADCI's proposal to use another LESO, when that proposal was properly rejected, and the BPA never deviated from the requirements of the RFQ.

In the event that this Court concludes that the Coast Guard unlawfully awarded the contract to ADCI, the proper remedy is for the Coast Guard to resolicit the BPA and consider only those bids that are technically compliant. See Mangi Envtl., 47 Fed. Cl. at 20 ("In fashioning relief for plaintiff, the court recognizes that it must avoid intruding too greatly into the

affairs of the agency . . . Accordingly, the court cannot direct the award of the contract to [the protestor] because to do so would infringe on the agency's right to decide to make contracts.") (citations omitted). Additionally, due to interests of national defense and national security, there cannot be a break in airtime services for INMARSAT Mini-M and Fleet series terminals. Therefore, if the Court were to enjoin the performance of ADCI's BPA, we would respectfully request that ADCI be allowed to continue to perform the Mini-M airtime service until another BPA can be put in place. See Beta Analytics, 44 Fed. Cl. at 140 (citing 28 U.S.C. § 1491(b)(3)).

## CONCLUSION

For these reasons and the reasons set forth in our opening brief, we respectfully request that this Court grant our motion for judgment upon the administrative record, deny plaintiff's cross-motion and request for injunctive relief, and dismiss plaintiff's complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

OF COUNSEL:

TALBOT J. NICHOLAS II
Attorney
Office of Procurement Law
United States Coast Guard
2100 2nd Street, S.W.
Washington, D.C. 20593-0001

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

July 17, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 21st day of July, 2008, a copy of the foregoing "REDACTED VERSION" of "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad